56 CCPA

**Application of Edwin LAND.**

**Patent Appeal No. 8000.**

United States Court of Customs and Patent Appeals.

Nov. 14, 1968.

Brown & Mikulka, Charles Mikulka, Stanley H. Mervis, Cambridge, Mass. (Robert M. Ford, Cambridge, Mass., of counsel) for appellant.

Joseph Schimmel, Washington, D. C. (Fred W. Sherling, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND, and BALDWIN, Judges.

WORLEY, Chief Judge.

The issues here are whether the Board of Appeals committed reversible error in affirming the examiner's rejection of claims 26–28 and 31–33 [1] as based on a specification failing to comply with the requirements of 35 U.S.C. § 112 and as unpatentable in view of certain prior art under 35 U.S.C. § 103.

The invention relates to an improvement in an image-receiving element employed in silver diffusion transfer processes for producing positive photographic prints. Appellant's brief describes the prior art process:

\* \* \* a latent image contained in a photoexposed, photosensitive silver halide emulsion, and formed as a record of the point-to-point degree of incident exposing electro-magnetic radiation, is developed by contact with a photographic developing composition containing, in essence, a silver halide developing agent and a silver halide solvent.

Substantially contemporaneous with development of the latent image, the silver halide solvent reacts with unexposed and undeveloped silver halide of the emulsion to provide a soluble silver complex which, at least in part, is transported as an imagewise distribution, by diffusion, in the direction of a contiguous print-receiving element. The print-receiving element comprises a layer, generally carried on a dimensionally stable support,

---

[1]. Appearing in application Serial No. 858,-454, filed December 9, 1959 and entitled "Novel Photographic Products and Processes."

adapted to receive the transferred soluble silver complex and *facilitate* its precipitation imagewise to provide the desired silver transfer image. In substantially all commercial embodiments of the process, the image-receptive layer contains one or more silver precipitating agents adapted to *catalytically assist* the precipitation of transferred soluble silver complex, thereby increasing both the density of silver image formation and the reaction rate. [Emphasis supplied.]

It appears from the specification that the silver image formed by the prior art process is subject to instability and "rub-off" due to its location primarily on the exposed surface layer of the print-receiving element which contains the silver precipitating agents. To obviate those problems, appellant employs a multi-layer image-receiving element in which the "effective concentration"[2] of silver precipitating agents in the various layers increases with distance from the silver halide emulsion layer, thus avoiding or minimizing the precipitation of the silver image in the upper surface layer of the image-receiving element and effectively "burying" the greater part of the silver image in sub-surface layers. The improvement is reflected in the following language from claim 31:

* * * the improvement which comprises transferring said imagewise distribution of said soluble silver complex to a preformed substantially photoinsensitive print-receiving element comprising a common support having on one surface thereof a plurality of contiguous layers, each of said layers comprising a decreased concentration, layerwise, of silver precipitating agents adapted to effect precipitation of said soluble silver complex and thereby to provide a visible image, wherein each layer of said plurality of layers comprises a substantially constant concentration of said agents, per unit area, within said layer and a decreasing concentration of silver precipitating agents, layerwise, as the distance of the respective layer from the common support increases, and said silver halide emulsion is in superposed relationship with the layer of said plurality of layers positioned most distal from said support.

The references are:

Land 2,563,342 Aug. 7, 1951
British Patent 746,948 Mar. 21, 1956
Land—*Photographic Age,* February 1949, pages 45–46.

2. Although the claims speak merely of the "concentration" of silver precipitating agents in the plurality of layers varying in a specified manner, it is clear from the arguments below, as well as here, that that term takes into account not only the weight of silver precipitating agent per unit volume coated in the various layers but also the relative activity of the silver precipitating agents, since the different layers may contain different species of precipitating agents of greater or lesser activity or strength. Thus, appellant stated below: * * * it will be recognized, from the context of the specification, that in the preferred embodiment, the *effective concentration* of the precipitant employed will decrease layerwise from the common support. Obviously, what happens if a layer containing an inactive precipitant in high concentration is coated with a more active precipitant in low concentration, will be dependent upon the *effective concentration* of the precipitants employed. In accordance with the preferred embodiment, set forth in the claims, the *effective concentration* decreases according to the stated disposition of the appropriate layer with respect to the common support. * * * [Emphasis supplied.] Hence the expression "effective concentration" has been employed below and will be employed here.

The examiner rejected all claims as unpatentable in view of Land '342 under § 103. Land discloses a silver diffusion transfer process in which a positive silver image is precipitated in a layer of film-forming polymer contained in, and spread as a component of, the developing agent and silver halide solvent processing composition. The examiner particularly relied upon the following disclosure of Land read in conjunction with Figures 1 and 2 of that patent reproduced below:

After the liquid composition [in container 16] has been spread between layers 14 and 18, the developer develops the exposed photosensitive material, and the silver halide solvent forms, with the unexposed and undeveloped portions of the photosensitive material, soluble silver complexes which are transferred from the photosensitive layer 12 through the opaque permeable layer 14 and into the layer of liquid composition where the film-forming material [e. g. sodium carboxymethyl cellulose or sodium CMC] is being converted from a fluid to a dimensionally stable film. The soluble silver image-forming complexes are then reduced to visible particles comprising silver by the unused developer which remains in the liquid layer.

It has been found that the use of the water-permeable gelatin layer 14, which is formed into a water-permeable assembly with the photosensitive layer 12, permits the transfer of soluble silver complexes through this gelatin layer while preventing development of the complexes to silver within the gelatin layer. This is believed to be due to the fact that gelatin is a better protective colloid than is the sodium carboxymethyl cellulose, and thus the gelatin apparently inhibits silver precipitation, *while the sodium carboxymethyl cellulose encourages precipitation of the silver. The positive image is formed* consequently, not in the gelatin opaque layer, but rather *in the film created by the film-forming material, i. e., the sodium carboxymethyl cellulose, from the container 16.*

\*   \*   \*   \*   \*   \*

One function of the lead salt [which may be optionally coated on the inner surface of layer 14] is to insolubilize the film-forming material when sodium carboxymethyl cellulose is used, by forming cross-linkages therewith. The lead salt may also react with some of the elements of the liquid composition in the area of the highlights so as to lower the alkalinity at least in the highlights to prevent staining thereof by excess developer. *The lead salt may also act to increase the density of the shadows in the positive image,* and increase the contrast the gamma of the positive image. *This lead salt may comprise a lead sulfide which has the beneficial effect of increasing the density of the positive image* in those cases where the photosensitive layer contains a relatively high quantity of iodide.

\*   \*   \*   \*   \*   \*

In some cases, it is desirable to utilize, in place of a transparent backing layer 18, an opaque, white image-carrying layer formed of a material such as baryta paper. It has been found that *with such a film unit there are two positive images formed: one is formed in the film created by the film-forming material, and the other is formed on and within the surface of the baryta image-carrying layer.* Such a modification of the invention is shown in Fig. 2 where like numbers correspond to like elements of Fig. 1.

\*   \*   \*   \*   \*   \*

\* \* \* This modification of the invention, therefore, has the added advantage that two positive images are obtained from one layer of photosensitive material and both positive images are stable final images. It should be apparent, however, that the image formed on the baryta image-carrying layer 20 is geometrically reversed with respect to the image formed in the film-forming material in the liquid from container 16. \* \* \*

In some cases *where it is desired to intensify the image formed on the surface of the image-carrying layer 20, this result may be accomplished by the use of a material having a strong precipitating effect upon the soluble silver complex. Such a material may com- prise lead sulfide formed on the image- carrying layer.* With such an image- carrying layer, *the lead sulfide encour- ages precipitation of the colloidal par- ticles of silver on the image-carrying layer, thus strengthening the second positive image.* [Emphasis supplied.]

FIG. 1

FIG. 2

The examiner regarded the above dis- closure to show that sodium CMC acts as a relatively weak silver precipitating agent to assist in formation of a first positive silver image in the processing composition layer which is spread be- tween layers 14 and 20, while lead sulfide acts as a relatively strong silver pre- cipitating agent when coated on baryta layer 20 to assist in providing a strength- ened, intensified, second positive image therein. Said the examiner:

* * * The reference is seen to meet the requirements of the claims with the possible exception of the express recitation of varying the concentration of silver precipitating nuclei. * * * As far as can be seen, *the sodium CMC of the reference is effectively present in "less concentration" than the lead sulfide on the baryta layer.* * * * [Emphasis supplied.]

The board agreed.

Appellant urges that the examiner and board erred in finding that "the sodium CMC of the reference is effectively present in 'less concentration' than the lead sulfide on the baryta layer" in the embodiment described in connection with Figure 2 of Land '342 because:

* * * sodium carboxymethyl cel- lulose categorically is not a silver nu- cleating agent, has not been establish- ed to be such by the Examiner, and technically cannot be so established. Examination of the appellant's patent of record clearly establishes the valid- ity of the appellant's position, as do the various patents of the appellant cited during prosecution, but no long- er applied against the claimed subject matter [and not of record], as well as an extensive collection of pertinent patents * * * which are not of

record.[3] * * * There is absolutely no basis in the art for considering sodium carboxymethyl cellulose to be a silver precipitating agent.

It seems to us that appellant's argument is in conflict with the specified function of sodium CMC set forth in the Land patent[4] when considered with the defined function of a silver precipitating agent set forth in his present specification.[5] Whatever traditional function sodium CMC may perform in the diffusion transfer art as simply a binder for the spread processing composition layer, it is evident that in the process of Land '342 it also "encourages," aids or perhaps even catalytically assists to some extent the reduction of the silver complex by developing agent and the precipitation of silver in that layer.

In any event, the position of the Patent Office does not appear to wholly depend on its finding that sodium CMC *per se* is a silver precipitating agent. The examiner particularly noted that Land, in addition to the conventional lead sulfide employed in layer 20 to strengthen the image therein, contemplates the possibility of employing some quantity of lead sulfide to strengthen or increase the density of the image formed in the sodium CMC layer. In his view, "varying the concentration of lead sulfide in either the sodium CMC or baryta layer to intensify the particular desired image is considered obvious from the reference." Appellant's arguments do not convince us of error in that position.

Finally, appellant urges that his cited patent is concerned with the production of two separate, independent and distinct positive prints during a single processing step whereas the present invention is distinguishable because it is directed to the production of a single positive print. It is true that, in connection with the embodiment of Figure 2, the Land patent intends ultimately to separate or strip the image formed in the sodium CMC processing composition layer 16 from the image formed in the lead sulfide-coated layer 20. However, those plural prints of Land, before separation from each other, are produced in a performed multi-layer image-receiving element, thus effectively forming one print, and, as the board pointed out:

* * * appellant's contention that the two distinct diffusion transfer prints [of Land '342] are different from his plural layered single print overlooks the fact that the claims are readable on the two distinct diffusion transfer prints in contact with each other. * *

We hardly think the board meant to imply that the present claims read on a

---

3. We, of course, must decide this appeal on the record before us. Appellant has introduced no other "pertinent patents" of his own or of others as part of the "evidence before the Patent Office" in the record here. See 35 U.S.C. § 144.

4. As noted earlier, Land states:
    * * * *the sodium carboxymethyl cellulose encourages precipitation of the silver.* The positive image is formed consequently, not in the gelatin opaque layer, but rather in the film created by the film-forming material, i.e., the sodium carboxymethyl cellulose, from the container 16.

    The same language is used to describe the function of the admittedly conventional silver precipitating agent, lead sulfide, which is coated on baryta layer 20:
    * * * the lead sulfide encourages precipitation of the colloidal particles of silver on the image-carrying layer,
    * * *

5. Appellant's specification states:
    * * * Examples of silver precipitating agents or nuclei of the preferred type are the so-called "heavy metal" sulfides of zinc, chromium, gallium, iron, cadmium, cobalt, nickle, lead, antimony, bismuth, silver, cerium, arsenic, copper and rhodium and the selenides of lead, zinc, antimony and nickle. Other precipitating agents have been proposed such as, for example, the colloidal metals and specifically colloidal silver. *The use of silver precipitating agents to aid in the reduction and precipitation of metallic silver from silver complex ions in the presence of a silver halide developing agent* in photographic diffusion-transfer reversal processes is well known to the art and does not per se constitute a feature of this invention. [Emphasis supplied.]

process producing a plurality of distinct prints "in contact with each other, for example, stored in a file cabinet" as appellant infers. Rather, the claims do not appear distinguishable from the process and product Land '342 discloses to exist prior to separation of the sodium CMC layer and layer 20 from each other.[6]

Having reviewed the record in light of appellant's arguments and failing to find the reversible error alleged, the decision is affirmed. The view we take renders it unnecessary to consider the other § 103 rejection or § 112 rejection of record.

Affirmed

6. It is also clear from appellant's specification that, long before the present application was filed, those in the art were aware of how to cause the film-forming processing composition to selectively ad-

here either to the photosensitive element as ultimately intended by Land in the embodiment of Figure 2 or to the conventional image receiving element.