59 CCPA

**Robert C. SWENGEL, Appellant,**

**v.**

**Jack W. BURKIG and John E. Richardson, Appellees.**

**Patent Appeal No. 8626.**

United States Court of Customs and Patent Appeals.

March 2, 1972.

Jay L. Seitchik, Harrisburg, Pa., attorney of record, for appellant.

W. H. MacAllister, Paul M. Coble, Los Angeles, Cal., attorneys of record, for appellees.

Before RICH, ALMOND, BALDWIN and LANE, Judges.

ALMOND, Judge.

This is an appeal by the senior party Swengel from the decision of the Patent Office Board of Patent Interferences awarding priority in interference No. 95,848 to Burkig and Richardson (Burkig), the junior party. In issue are two counts corresponding to claims of a Burkig patent,[1] copied by Swengel in his application.[2]

The subject matter in issue is a grid of interconnected electrical conductors suitable for use in interconnecting electrical components, such as micro-size elements, in selected different circuit networks. A particular network is obtained by severing selected conductors and selected tabs included in the interconnections between conductors. Further particulars will be apparent from count 1, reproduced below as representative of the subject matter in issue:

1. An electrical interconnection grid comprising a first plurality of electrical conductors, each having electrical continuity, a second plurality of electrical conductors, each having electrical continuity and crossing said first conductors and insulated therefrom, each conductor of said second plurality of electrical conductors having a plurality of tab portions extending therefrom and making electrical contact with respective conductors of said first plurality of electrical conductors, circuits including selected portions of conductors and tab portions being obtained by severing conductors to leave said selected portions and severing tab portions from conductors excepting those tab portions forming part of said circuits.

The only substantive issue is Swengel's right to make the counts, which issue was decided adversely to him after final hearing before the board. However, Swengel contends that Burkig was not entitled to final hearing on that issue, thus raising a preliminary matter the determination of which requires review of the background of the proceedings.

The interference was declared as a result of the Board of Appeals reversing a rejection of claims in the Swengel application corresponding to the counts, which rejection was made by the examiner on grounds of lack of supporting disclosure. Swengel subsequently moved for judgment on the record under Patent Office Rule 225[3] on the ground that

---

1. Patent No. 3,128,332, issued April 7, 1964, on an application filed March 30, 1960.

2. Serial No. 848,568 filed October 26, 1959.

3. *Failure of junior party to file statements or to overcome filing date of senior party.*

If a junior party to an interference fails to file a preliminary statement, or if his statement fails to overcome the prima facie case made by the filing date of the application of another party, judgment on the record will be entered against such junior party unless he has filed a motion

the Burkig preliminary statement did not prima facie overcome Swengel's filing date. Burkig responded with a motion to dissolve the interference alleging that Swengel cannot make the counts. The patent interference examiner dismissed Swengel's motion for judgment as premature. He additionally deferred consideration of the motion to dissolve until final hearing to the extent that it was based on the same issues decided by the Board of Appeals,[4] but he transmitted it to the primary examiner to determine issues not so decided, if any.

Swengel petitioned the Commissioner to review the action of the patent interference examiner. In deciding the petition, the Commissioner observed:

> The entire question of right to make may be reviewed at final hearing by the Board of Patent Interferences, which will not be bound by the decision of the Board of Appeals, and it is thought to be desirable to handle the matter in that manner.

He then ruled:

> The petition is granted and the Burkig et al. motion to dissolve is dismissed without prejudice to the right of that party to question, at final hearing, Swengel's right to make the counts.

When Burkig had not filed a request for final hearing within twenty days of the Commissioner's decision, Swengel again moved under Rule 225 for judgment on the record. The board denied the Swengel motion insofar as it is relevant here and set the case for final hearing on the question of right to make raised by the Burkig motion.

Swengel contends that the failure of Burkig to file a specific request for final hearing on the motion to dissolve within the twenty days from the Commissioner's decision barred final hearing on Swengel's right to make. In response to his similar contentions below, the board reasoned that it was the clear intent of the Commissioner's decision on petition that Swengel's right to make be considered at final hearing by the board. The board concluded that:

> * * * there was no necessity that Burkig et al. request final hearing. We think that Burkig et al., relying on that decision, could reasonably expect that a final hearing would be set to consider their motion to dissolve without their filing a specific request to that end.

We see no error in the board's treatment of this matter. The statements made by the Commissioner left reasonable grounds for Burkig to expect that final hearing would be set on the matters raised by the motion to dissolve without a specific request by Burkig. It is unnecessary to determine whether, under the circumstances, the Commissioner's decision constituted a decision "disposing" of the motion in the sense intended by Rule 225 in requiring that a request for final hearing be made within twenty days. Even if it did, the board's procedure was clearly justified on the ground that the circumstances provided a sufficient excuse for Burkig's not making an express request. See Beacham Products Inc. v. Hawaiian Perfumers, Inc., 440 F.2d 1037, 58 CCPA 1131 (1971).

Turning to the merits of the right to make issue, an example of a wiring

---

under rule 231, within the time set for such motions, for some action in the interference. If such a motion has been timely filed but does not result in action in the interference which will remove the basis for a judgment on the record, such judgment on the record will be entered unless the motion related to matters which may be reviewed at final hearing under rule 258, and within 20 days of the decision disposing of the motion the junior party concerned requests that final hearing be set to review such matters.

4. He thereby apparently followed in part the practice set out in Janeway v. Nystrom, 77 USPQ 229 (Com.Pat.1946).

framework in accordance with Swengel's disclosure is shown in exploded perspective view in a part of Fig. 2 of his application reproduced below:

[A5402]

The framework 3 includes a base panel 4 of insulating material and a series of spaced, parallel sidewall panels 6 of insulating material set edgewise on the base panel. On the outer surfaces of panels 4 and 6 are strips 8 and 10, respectively, of conducting material. A series of flat blades 38 of conductive material is mounted to set edgewise on the opposed inside faces of sidewall panels 6 by means of lateral locking tabs 40, which extend through slots 42 in the panels. The blades 38 have transverse tines extending through apertures 60 in the walls 6 for connection to circuitry strips 10 and longitudinal tines 62 for projection through apertures 63 in base 4 for connection to conductive strips 8.

The framework 3 receives selected module units in the form of receptacles of insulating material which house various electrical components or circuits and have terminals on the outside for making electrical contact with various conducting blades 8. For making any particular circuit network, all of the interconnections made possible by the disclosed construction of the framework 3 are not needed. Those unneeded interconnections "may be omitted by selective elimination of various contact assemblies and circuit strips in whole or in part."

In deciding that the Swengel application does not support the counts, the board found:

15. The Swengel structure is custom made for each circuit configuration. Such tines (tabs) as are unnecessary on the vertical lines are removed prior to assembly. The horizontal lines are cut as desired and drilled at appropriate places for insertion of cooperating tines remaining on the vertical conductors. The grid is then assembled * * * and the remaining tines (tabs) are bent over and soldered to the respective horizontal conductors. * * *

16. Count 1 sets forth "* * * said second plurality of electrical conductors having a *plurality of tab portions* extending therefrom and *making electrical contact* with respective conductors of said first plurality of electrical conductors," (emphasis added) and—"circuits including selected portions of conductors and tab portions being obtained * * * *by severing tab portions* from conductors * * * (emphasis ours [board's]).

17. Count 2 contains substantially the same language.

* * * * * *

22. The language of the counts as set forth in (16) and (17) requires a structure wherein a "tab" that is making an electrical connection may be severed to break the connection.

23. The Swengel structure does not support the quoted language nor can we find in the Swengel application any contemplation of breaking any connection once the grid has been assembled.

In his brief, Swengel points out how he regards his application to support the counts by describing its disclosure in language generally corresponding to that of the counts as follows:

* * * there is disclosed a grid having a first plurality of electrical conductors 10 and a second plurality of electrical conductors 38. The two pluralities are arranged in crossing rela-

tion and are insulated from each other by layer 6. The conductors 38 have tabs 56 extending therefrom and make electrical contact with respective ones of the conductors 10 through the layer 6. The desired circuit is formed by selective severing of conductors and tabs * * *.

To support his assertion of "selective severing of conductors and tabs," Swengel refers to his Fig. 2 as showing that some of the conductors 10 "have been selectively severed." He also cites a statement in the application that strips 10 "may be broken or interrupted" and an instruction in it to "interrupt circuitry strips 10" by slotting the panel across the circuitry strips or "by grinding or burnishing away the metal of the circuitry strips at appropriate points along their lengths."

However, that analysis does not demonstrate support for the requirement in the counts that the grid have electrical connections made between the pluralities of conductors with selected circuits obtained by severing selected conductors and tab portions. Swengel does not disclose a grid which can be used to readily make circuit networks of selected combinations of electrical elements and subcircuits by merely severing selected conductors and tabs which are already electrically interconnected. Rather, Swengel's disclosure is directed to a construction wherein the parts needed for a particular circuit network are selected from a "small variety of standard parts which may be partially preformed" and those selected parts are then assembled and electrical connections made. More specifically, the Swengel disclosure is that, once the particular circuit network is determined, selection is made of the combination of side panels 6, base panels 4, and conductive blades 38 that are required. As to the blades, it is necessary to determine where in the panels they are to be provided and where they are to be omitted, and also which tines 56 and 60 are to be used on the blades provided. The application discloses that the holes 60 and 63 in the panels for receiving the

582

tines are selectively drilled in preforming the panels, indicating further that such tines as are not required must be removed before the blades are assembled on the panels and before electrically connecting the retained tines to conductor strips 8 or 10. It is also clear that any interrupting of circuitry strips 10 by "slotting" the panel or "grinding or burnishing away the metal" is to be done before the various panels and blades to be used are assembled into a unit.

Swengel additionally argues that the language at the ends of the claims is "functional." He seems to think that charge requires ignoring the allegedly functional language in the counts and that the counts therefore should be considered to read on his grid. Actually, the language does impose a limitation on the article defined as is clear from the interpretation given the counts by the board, with which we agree. The language therefore cannot be ignored since "[a]ll limitations in the copied claim will be considered material in determining applicant's right to make the claim * * *." Segall v. Sims, 276 F.2d 661, 47 CCPA 886 (1960). See also Smith v. Wehn, 318 F.2d 325, 50 CCPA 1544 (1963).

Finally, Swengel compares the counts with a claim in the Burkig patent which he did not copy. He argues that the language in that claim does require a grid where there are connections such as the board found necessitated by the counts. Appellant advances that contention as an indication that the board erred in finding the above-mentioned requirement in different language of the counts. While such a comparison might sometimes be pertinent in resolving ambiguities, it is doubtful that it is an appropriate consideration where, as here, no ambiguity is found in the count language. Nevertheless, we have examined the claim referred to and we fail to find any apparent significance in the difference in language so far as the limitations here in question are concerned.

Also, we have given thorough consideration to the determination of the Board of Appeals that gave rise to the declaration of the present proceedings. However, we find the comprehensive record and arguments here convincing that the Board of Patent Interferences did not err in determining that the Swengel application does not support the counts. Therefore, the decision on appeal is affirmed.

Affirmed.