59 CCPA

**Benjamin Chiatse SZE, Appellant,**

v.

**Godfrey BLOCH, Appellee.**

**Patent Appeal No. 8697.**

United States Court of Customs and Patent Appeals.

April 27, 1972.

A. Newton Huff, Wilmington, Del., attorney of record, for appellant; Gerald A. Hapka, Arlington, Va., of counsel.

S. Augustus Demma, New York City, attorney of record, for appellee.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and MALETZ, Judge, United States Customs Court, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Patent Interferences awarding priority to appellee, Godfrey Bloch, on the ground that appellant, Benjamin Chiatse Sze, cannot make the counts in issue.

The three counts in issue correspond to claims of the Bloch patent,[1] which were copied by Sze in his application.[2] After Sze copied the claims from the Bloch patent, a first interference was set up.[3] Bloch then moved to dissolve the interference on the ground that Sze could not make the counts. The primary examiner granted this motion, dissolved the interference, and rejected ex parte the three claims which Sze had copied from the Bloch patent on the ground that they were not supported by the disclosure of Sze's application. Sze appealed to the Board of Appeals. The examiner, in his Answer, withdrew the rejection of the claim corresponding to count 3, but maintained the rejection of the claims corresponding to counts 1 and 2. The board reversed, finding that the Sze disclosure was sufficient to support the rejected claims. As a result, a second interference (the present one) was declared with the counts the same as those

---

1. Patent No. 3,061,998 issued November 6, 1962 on an application filed November 12, 1959 as a continuation-in-part of application serial No. 497,776 filed March 29, 1955.

2. Serial No. 303,214 filed August 14, 1963 as a continuation-in-part of application serial No. 651,018 filed April 5, 1957.

3. Interference No. 93,996 declared December 27, 1963.

involved in the prior interference. Again Bloch moved to dissolve the interference on the ground that Sze could not make the counts. Bloch also moved to be accorded the benefit of the filing date of his parent application. The primary examiner granted Bloch's motion for the benefit of the earlier filing date, but in accordance with Janeway v. Nystrom, 77 USPQ 229 (Com.Pat.1946), deferred consideration of the motion to dissolve until final hearing. At final hearing the Board of Patent Interferences held that Sze could not make the counts and, therefore, found it unnecessary to consider whether Bloch is entitled to the earlier filing date. Sze appeals from that decision.

The invention in issue relates to a bulked dimensionally stable singles yarn. Singles yarns (i.e., yarns that have not been plied) of continuous synthetic filaments, which have a uniform cross-section, are much denser than yarns of natural staple fibers, which do not have a uniform cross-section. In order to produce a yarn of continuous synthetic filaments which resembles staple fiber yarn, the filaments may be bulked by crimping. However, strands of crimped filaments are not dimensionally stable since stretching of the strand will straighten out the filaments. To achieve dimensional stability, the crimped filaments may be combined with straight, stress-bearing nonelastic filaments, shich limit stretching of the strand. The counts in issue are directed to such a yarn.

Count 1 is illustrative:

1. A bulked dimensionally stable singles yarn composed of a plurality of continuous filaments, certain of said continuous filaments being uniformly crimped throughout at least a portion of their length to provide bulk and others of said continuous filaments being in relatively straight form to provide dimensional stability, said crimped and straight filaments being randomly disposed throughout the cross-section of said yarn.

The Bloch patent, wherein the counts arose, discloses that:

In accordance with one embodiment of the present invention two bundles of continuous filaments composed of the same or of different synthetic materials and derived from separate spinnerets feeding into the same or into different spinning baths are so processed that the two bundles of filaments have different shrinkage characteristics. These bundles are then combined and subjected to treatment adapted to shrink the various filaments in the bundle.

As a result of this differential shrinkage one group of filaments becomes shorter than the other group thereby causing the longer filaments to pull up and deviate from a straight line condition into gathers, puckers, folds, loops, or other shapes, herein referred to generally as crimps, at various points along their length and thereby form a bulked yarn.

Elsewhere in the patent it is disclosed that:

The bundles can be combined by opening the individual bundles as by an air jet or by separating the filaments by suitable guides and combining the bundles with the various filaments interleaved uniformly or with one group predominantly on the outside and the other group predominantly on the inside.

Also two bundles of different characteristics may be obtained by extrusion of two materials of different compositions from a composite spinneret wherein one material is extruded, for example, through openings disposed around the center of the spinneret and the other composition is extruded from openings disposed around the periphery so that the filaments from the latter openings are disposed largely on the outside of the finished bundle while the filaments from the first openings are disposed on the inside.

Appellant's applications [4] also disclose a bulked dimensionally stable singles yarn "consisting of a self-crimpable or composite member * * * and a stress-bearing, single-component filament." It is stated that, while such yarns "may be prepared by blending a single component [stress-bearing] yarn with a sheath-core [crimpable] yarn, the mixture may be more conveniently produced by * * * [a] filament forming extrusion assembly * * * which comprises a spinneret plate containing a multiplicity of apertures * * *." Example I, for instance, describes a process whereby ten outer orifices of a spinneret extrude crimpable filaments while at the same time five inner orifices extrude stress-bearing filaments. "The polymers, at 270° C., are spun into air at 25° C. and wound up at 1200 yards per minute." Thereafter, the yarn is first stretched and then shrunk to form crimps in the crimpable filaments. The stress-bearing filaments remain relatively straight. As an alternative, Sze also discloses a less preferred process of extruding the crimpable and stress-bearing filaments separately, plying the filaments with a light twist, and treating the yarn to bulk it.

The substantive issues in this case all center around the limitation in the count that the crimped and straight filaments are "randomly disposed" throughout the cross-section of the yarn. Neither the Bloch nor Sze disclosures explicitly state that random disposition is achieved. Bloch contends that his preferred process of separately extruding the two types of filaments and then combining them does, however, result in random disposition, whereas, a co-spinning process does not. Therefore, in his view his parent application, disclosing a process of combining the separately extruded filaments, supports the count, and he should be entitled to the benefit of the filing date of that application. Bloch

argues that, on the other hand, Sze cannot make the counts since neither Sze's disclosed co-spinning process nor the alternative process of plying separately extruded filaments results in random disposition. It is Sze's position that a co-spinning process results in the required random disposition and that while a process of combining separately extruded filaments which includes a step of opening the filaments with air jets prior to combining (such as disclosed in the Bloch patent) may result in random disposition, mere combination of the filaments without such a step does not. Therefore, Sze contends that Bloch is not entitled to the benefit of the filing date of his parent application, which does not include a discussion of using air jets. In addition, appellant seemingly admits that his less preferred process of plying separately extruded filaments does not give a random disposition, but he vigorously argues that his co-spinning process does and, as such, he can make the counts in issue.

The Board of Interferences, in awarding priority to appellee, held that Sze could not make the counts. Before we proceed to review the merits of that decision, we first must consider whether appellee had a right to raise the issue in the first place. Appellant contends that Bloch's motion to dissolve in this interference should have been dismissed since it was raised in the previous interference and then ex parte proceedings were had wherein it was held that the Sze disclosure supported claims corresponding to the counts in issue in both interferences. Appellant, in his brief, states, "It is questionable whether the Board of Patent Interferences has the authority to reverse the Board of Appeals in such a situation."

We see no merit to appellant's contention. His position in that regard is so vulnerable that we hardly know where to

---

4. Sze's parent application is conceded by Bloch to be the same as the one involved herein as far as the counts in interference are concerned. Sze was accorded the benefit of the filing date of his parent application.

begin when discussing it. Appellee, in his brief, sized it up as follows:

> The unfairness and consequent unsoundness of depriving a party in an inter parte[s] case of a final hearing after he has prevailed in a decision in the inter parte[s] proceedings, simply because the other party has been able to obtain ex parte a contrary decision, is too obvious to require much discussion.

We agree. We also wish to add agreement to the statement of the Board of Patent Interferences that "Bloch's motion to dissolve is ancillary to priority and we alone are charged with the duty of determining the issue or priority." It makes no difference that there was a previous interference which was dissolved by the primary examiner on the ground that appellant could not make the counts. The present interference arose because of the ex parte determination of the Board of Appeals that appellant had support for the claims corresponding to the counts. Frequently interferences result from the reversal by the Board of Appeals of the examiner's rejection of claims which have been copied from a patent on the ground of lack of support. The Board of Patent Interferences then decides the priority issue, including the ancillary issue of the right to make the counts, and it is not bound by the ex parte determination of the Board of Appeals. This court has consistently approved of such a procedure. A recent example is Swengel v. Burkig, 455 F.2d 577, 59 CCPA — (1972).

■■ The Board of Patent Interferences found that appellant could not make the counts since

> * * * Nothing in the disclosure of Sze points to any process or conditions of operation of his disclosed spinning apparatus, yarn drawing apparatus, heated pins, etc. which would permit, much less *necessarily* would require, that the filaments would be so mixed or blended that the resulting yarn would support the counts in issue. We do not have a clear teaching in Sze's *application* that the inner bundle of filaments is opened up at any time upon leaving or after leaving the spinneret such that the filaments of the outer concentric bundle can intermix therewith and the filaments can become randomly disposed as required by the counts. Further, there is nothing disclosed as to the after processing or handling which also would permit much less necessarily would require the opening of the bundles of filaments to the extent essential to attaining the count-required random disposition of the filaments.

In doing so, the board was placing a heavy burden on appellant who had copied the claims of a patent and who had argued that his own disclosure inherently supports said claims. Dreyfus v. Sternau, 357 F.2d 411, 53 CCPA 1050 (1966). As noted, the board felt that appellant had not met this burden and proven that random disposition must inevitably happen. Appellant recognizes that he has the burden of proving that he can make the limitation in issue. However, appellant takes the position that he has met his burden since his disclosed co-spinning process invariably and necessarily results in random distribution of the filaments.

We agree with appellant. The Board of Patent Interferences and appellee take the position that appellant's process of co-spinning crimpable filaments from outer orifices and stress-bearing filaments from inner orifices will result in an outside-inside arrangement of the filaments. It is their position that the outside-inside arrangement is fixed and that random disposition cannot occur since there is no indication that the filaments are "opened" to allow intermixing and since the tension on the yarn would tend to maintain the outside-inside relationship of the two types of filaments.

In the first place, we note that the filaments of Sze are "open" since they are extruded from separated nozzles on the spinneret and then converge to form a yarn. As appellant states, "the fila-

ments as extruded are all separated from one another but are intermingled as they converge to form a yarn and remain intermingled throughout the various handling steps; in fact it would be quite difficult to keep them from such intermingling in the handling steps." Likewise, while there is some tension on the filaments, immediately after extrusion it is undoubtedly low since the imposition of any appreciable tension at this point would break the filament at the spinneret where the polymer is still in the molten state. Appellant alleges, and we agree, that notwithstanding whatever tensions are placed on the filament, some intermingling must still of necessity occur when the filaments converge together and then proceed through the remaining treatment steps.

We see no reason why the co-spinning process of Sze would not result in as much random disposition of the filaments as the process of Bloch. If Bloch's process results in random distribution, and it is out of the Bloch patent that claims arose having such a limitation, we think Sze's co-spinning process must also necessarily result in such random disposition.

Appellee also relies on Dyer v. Field, 386 F.2d 466, 55 CCPA 771 (1967), where this court found counts directed to a bulky yarn having interwoven filaments were not supported by the Field disclosure. While that case involved the same art area and generally similar issues, both the count limitations in issue and the disclosed process which allegedly supported those limitations are different from those involved herein. We fail to see how Dyer v. Field is controlling in this case; however, to the extent that it is relevant we have considered it, and the other cases cited by the parties, in reaching our decision.

Since we disagree with the Board of Patent Interferences and find that Sze can make the counts in issue, the decision of the board is *reversed*. The parties also briefed and argued, as they did below, the issue as to whether Bloch is entitled to the benefit of the filing date of his parent application. Because of its disposition with regard to Sze's right to make the counts, the board found it unnecessary to reach that issue. Since there is no decision by the board in regard to whether Bloch is entitled to the benefit of the parent application's filing date, we do not wish to consider that issue now. Myers v. Feigelman, 455 F.2d 596, 59 CCPA —— (1972). Rather, we *remand* to the board in order that it may consider the issue.

Reversed and remanded.