**Dale A. GELLERT, Appellant,**

v.

**Joseph S. WANBERG, Appellee.**

**Patent Appeal No. 9045.**

United States Court of Customs and Patent Appeals.

May 2, 1974.

Albert E. Strasser, Melville, Strasser, Foster & Hoffman, Cincinnati, Ohio, attorney of record, for appellant; John V. Gorman, Richard C. Witte, George A. Arkwright, Shlesinger, Arkwright, Garvey & Dinsmore, Arlington, Va., of counsel.

R. V. Patrick, Boston, Mass., attorney of record, for appellee, H. L. Kirkpatrick, Martin Kirkpatrick, Fish & Richardson, Boston, Mass., of counsel.

RICH, Judge.

This appeal is from the decision of the Board of Patent Interferences awarding priority of the fifteen counts in interference No. 96,531 to the senior party, Joseph S. Wanberg, patentee of U. S. Patent No. 3,369,545, issued February 20, 1968, on an application filed September 25, 1964, entitled "Disposable Diaper with an Integral Container and Method for Disposal" and assigned to The Kendall Company. Appellant, Dale A. Gellert, is junior party, involved on his application serial No. 498,268, filed October 20, 1965, entitled "Disposable Diaper with Integral Disposal Bag" and assigned to Proctor and Gamble Company. We affirm.

*The Invention*

The invention to which all of the fifteen counts in issue are directed is a disposable or throw-away diaper having a fluid-impervious bag or pouch integrally attached to the outer or rear side of the diaper, the pouch being reversible, i. e., capable of being turned inside out, after the diaper has been used, to contain the soiled diaper and provide a convenient means for its disposal. Nine of the counts are directed to the disposable diaper structure and six to the method of manipulating the diaper to effect reversal of the pouch and form a container for the soiled diaper. The parties have treated all of the counts as standing or falling together on the issue before us. Representative are the broadest article and method counts, 1 and 5:

1. A disposable diaper having a length and width sufficient to fit around and cover the lower portion of the torso of a human body from the waist at the back of the body over the crotch to the waist of the front of the body, said diaper comprising a supple, fluid absorbent body and pouch integrate [sic] therewith suitably reversible for covering envelopment of a fluid-pervious surface of the diaper after use, said fluid absorbent body having a front side and a back side, said front side having a fluid-pervious surface for contact with a body, said back side having an impervious surface for preventing strike-through of fluid absorbed in said absorbent body, and said pouch having a wall portion thereof common with at least a portion of said impervious surface at the back side of said absorbent body and the remainder of the pouch wall comprising a supple, impervious sheet attached to said body whereby said impervious surface and said sheet form opposing wall portions of said pouch and define the pouch cavity at the back of said absorbent body when the absorbent body is in use.

5. In disposing of an absorbent article upon and in which are collected body fluids, said absorbent article comprising a supple fluid absorbent body having a fluid pervious front surface soiled by said fluids and a fluid pervious back surface and a fluid impervious sheet overlying said back surface and attached to said absorbent article to form a pouch therewith wherein said sheet and said body constitute opposing wall portions of the pouch defining the pouch cavity at the back of said absorbent article, the method comprising

turning said pouch inside-out by grasping a wall portion inside said cavity and moving said wall portions with respect to each other into a position in which the respective surfaces of said wall portions are positioned in substantially the reverse of their original positions so that said back surface of the absorbent body is disposed to the exte-

rior and the soiled front surface is disposed to the interior of the cavity formed upon turning said pouch inside-out.

## The Issue

The single determinative issue, under the view we take of this case, is whether Wanberg has established an actual reduction to practice prior to Gellert's conception in May, 1963.

## The Facts Surrounding Wanberg's Reduction to Practice

While some of the facts surrounding the Wanberg reduction to practice are disputed, it is clear that Wanberg on at least one occasion made up a sample diaper embodying the invention and demonstrated his concept of a reversible pouch to his superior at the Kendall Company by the following acts, which Wanberg alleges show a reduction to practice. A conventional disposable diaper, which had a single layer of polyethylene film backing, was modified by the addition of a second sheet of polyethylene affixed to the film backing of the conventional diaper by pressure sensitive adhesive tape along three edges thereof to form an integral pouch. Then Wanberg reached into the pouch with his hand and reversed the pouch so it was "inside out" and the diaper itself was inside the bag formed by the reversed pouch.[1]

We must determine whether this demonstration is sufficient to constitute a reduction to practice of the invention of the counts. It is appellant's position that "a reduction to practice under the circumstances of this case requires *more* than merely demonstrating the reversibility of an unused diaper, i. e., the bare demonstration of its principle of operation." What in essence is lacking, according to appellant, is the testing of this invention under circumstances actually representing or simulating in-use conditions of the disposable diaper which has as its ultimate purpose the containment of excrement emanating from a baby.

## Appellant's Arguments

Appellant made before the board several arguments why he believed the facts do not show a reduction to practice, being essentially the reasons why he believed the invention could only be reduced to practice by applying the diaper to an infant. These arguments are repeated before us. Appellant noted that the counts all contemplate use of the diaper on humans and define a structure which is reversible "after use" or "soiled by body fluids or excrements" or relate to a method of disposing of an article "in which are collected body fluids" and which has a "front surface soiled by said fluids" and argued that the fact that the claims contain such references should dispose of the contention that it was not necessary to put the diaper on an infant to reduce the invention to practice. In appellant's view such claim limitations established what could only be the intended functional setting for the invention and anything short of such application was not a reduction to practice.

Appellant also notes, as he did before the board, that without the application of the diaper to an infant, one could not be sure that the crushing and twisting of the diaper when in place upon an active infant would not so distort the pouch that it would no longer function upon reversal to contain the excrement. Finally, appellant questions the effect of pinning the diapers to hold them on the infant, in an apparent belief that the pinholes would so tear the pouch as to make it unable to contain the diaper upon reversal. On both of these

1. These acts by Wanberg are fully corroborated by the testimony of Bart O'Connor. We agree with appellant that corroboration is lacking as to the further allegation by Wanberg that he poured some water on the diaper prior to reversing the pouch, but under the view we take of the case that the acts of Wanberg without the addition of water constitute a reduction to practice, this lack of corroboration is not determinative of the issue before us.

points, the crushing and pinning, appellant cites the testimony of appellee's witnesses, elicited upon cross examination, questioning to some extent whether the invention would work under these conditions. As to the effect of pinning, appellant further notes before us that "on June 20, 1969, Wanberg filed an application * * * [on another invention] which issued as U. S. Patent 3,585,999 on June 22, 1971—some two months after the oral argument below," in which Wanberg noted that the disposable diapers "are subject to tearing during or after the operation of inserting safety pins, thus * * * *causing points of possible leakage at the tears.*" Appellant notes correctly that this patent is not in evidence, but urges the court to take "judicial notice of it as a public record since it belies Wanberg's contention, as well as the Board's conclusion, that pin tearing was not a problem which should be taken into consideration." However, we will not take judicial notice of this patent, which is not of record in the case and was not considered by the board. In re Land, 402 F.2d 801, 805, 56 CCPA 724, 728 (1968).

### The Board's Decision

The above and other arguments were all considered by the board which concluded that they were matters relating to commercialization of the invention. As far as reduction to practice was concerned, the board was not convinced that they would so affect the operation of disposal of the diaper by reversing the pouch as to negate reduction to practice. With respect to putting the diaper on an infant with its concomitant effect on the diaper and its disposal, the board said:

> We are not persuaded that the matter of pinning as distinguished from taping diapers in place and the possible tearability of the pouch are of any particular import with respect to reduction to practice of the article resulting from the addition of the pouch-forming sheet to a diaper as distinct from the basic commercial diaper. We are not concerned with a liquid-filled bag; we are concerned with a pouch for containing possibly, a very wet diaper, a very wet and solid-soiled diaper, a solid-soiled diaper or possibly only a slightly damp diaper. Therefore, we do not regard pin holes or tears that might appear in the additional pouch-forming sheet to be of such concern, as far as functioning as a pouch is concerned, as to negate its use in its intended manner as an enclosing pouch until final disposal can be effected. We can not accept the argument that the crushing of the article between the legs of an infant will so distort the pouch, having in mind the materials used and the thickness of the impervious sheets of the pouch, that the "effective reversal" of the pouch and diaper would be prevented or obstructed.

As to the law of reduction to practice and the nature of this invention, the board said:

> However, we also appreciate the incontrovertible fact that the invention involved only the modification of a conventional disposable diaper in manner having no apparent direct effect on the article to perform the normal function of a diaper while at the same time providing a pouch for easy, transitory disposition or handling of the soiled diaper prior to its ultimate disposal. As Wanberg states at page 24 of his brief, and which is not denied by Gellert,
>
> > * * * the basic Kendall disposable diaper itself was a standard article of commerce which Wanberg modified * * *, thus providing an additional feature for an additional optional purpose.
>
> Precisely the same thing could be said of the Proctor and Gamble Pampers and of Gellert's activities.
>
> We note that even in the case of Chittick v. Lyons et al., supra [26 CCPA 1382, 104 F.2d 818, 42 USPQ 132 (1939)], the court indicated that all that is required for actual reduc-

tion to practice is that it be shown that it be

> *reasonably certain* that the subject matter will perform its intended function in actual service. (our emphasis)

In the case of Gordon v. Hubbard et al., 52 CCPA 1598; 347 Fed. [2d] 1001; 146 USPQ 303; 1965 CD 958 [(1965)]; citing White v. Lemmerman [52 CCPA 968, 341 F.2d 110, 144 USPQ 409 (1965)] and Paivinen v. Sands, [52 CCPA 906, 339 F.2d 217, (1964)] both supra, our appellate tribunal stated,

> In all of the cases in which this court has reviewed whether sufficient and proper testing had occurred to establish reduction to practice, we have taken pains to point out that the nature of the testing required depends on the particular facts of each case. A certain amount of 'common sense' must be applied in determining the extent of testing required.
>
> \*   \*   \*   \*   \*   \*
>
> Mindful of the standard that is to be applied in determining the matter before us and consonant with the rule applied and the conclusion reached in the case of Neufeld v. Marte, 45 CCPA 888, 254 Fed [2d] 164; 117 USPQ 291; 1958 CD 268 [(1958)], we hold that Wanberg has proven actual reduction to practice of the invention here in issue no later than the end of the year 1962.

The board's reference, alluded to in the second paragraph of the above state-ment, to the activities of Gellert and his assignee, was somewhat expanded in another portion of the board's opinion where the reference was made to the activities of Gellert whose "early demonstrations" of his invention, initially relied upon by him for an actual reduction to practice, were performed in substantially the same way in which Wanberg demonstrated his invention to his superiors. However, we agree with Gellert that there is no indication that the board considered his activities material to its decision.[2]

## OPINION

■■ We agree with the board that the above described acts of Wanberg are sufficient to establish an actual reduction to practice. Under decisions of this court, as noted by the board, the nature of testing which is required to establish a reduction to practice depends on the particular facts of each case, especially the nature of the invention. Applying, in the words of the court in Paivinen v. Sands, supra, a "certain amount of 'common sense'" to determine the extent of testing which is required to reduce a particular invention to practice, we hold that Wanberg's corroborated acts are legally sufficient.

■ In White v. Lemmerman, supra, we recognize that an invention may be tested sufficiently for its reduction to practice where less than all of the conditions of actual use are duplicated by the tests. We said that in order to show reduction to practice, "the evidence must establish a relationship between the test

2. Much has been made by appellee of statements which Gellert made in his preliminary statement and Rule 204(c) affidavits about his own acts of reducing the invention to practice, which appellee feels ought in some way to control the legal standards of judging the sufficiency of the acts of appellant for a reduction to practice or ought at least to be considered admissions against appellant's interest in this matter. In his Memorandum in Support of Appellant's Motion for Leave to File a Reply Brief, appellant stated that

> Nowhere in the Board's decision below is there any reference whatsoever to appel-lant's file wrapper, his preliminary statement or Rule 204(c) affidavits, or any indication that the Board considered any of these matters as material in reaching its decision, even though raised by appellee in his brief below and responded to by appellant.

We agree with appellant and consider that the board's reference to the acts of appellant was only to *confirm* that it had already correctly concluded that the acts of appellee were legally sufficient to constitute a reduction to practice. Compare Bennett v. Serota, 477 F.2d 1385, 1390 (CCPA 1973).

condition and the intended functional setting of the invention." We think that for this invention, which resides, as noted by the board, not in the conventional disposable diaper but rather in its modification to provide a reversible pouch at the rear thereof, such a relationship has been established. We have considered all of the various factors, such as the effect which pinning the diaper on an infant might have on the operability of the invention, and agree with the board that they are not "of any particular import with respect to reduction to practice of the article resulting from the addition of the pouch-forming sheet to a diaper as distinct from the basic commercial diaper." As we earlier stated in Neufeld v. Marte, 254 F.2d at 167–168, 45 CCPA at 892:

Without intending to detract in the slightest from the standards which have heretofore been applied by this court in particular cases, we would point out that a certain amount of common sense must be applied in determining the extent of testing required for a reduction to practice.

The decision of the board is affirmed.

Affirmed.