Curtis L. HOLMES, William M. Faber, Sr., Otis F. Boykin and Gaylord L. Francis, Appellants,

v.

William Thomas KELLY, Leon Bruce Hornberger and Milton John Strief, Appellees.

Appeal No. 78–539.

United States Court of Customs and Patent Appeals.

Nov. 9, 1978.

John J. Gaydos, Elkhart, Ind., atty. of record, for appellants.

John E. Vanderburgh, Robert S. Frieman, Fullerton, Cal., attys. of record, for appellees.

Before MARKEY, Chief Judge, RICH, BALDWIN and MILLER, Associate Judges, and FORD,* Judge.

MILLER, Judge.

This appeal is from the decision of the Patent and Trademark Office ("PTO") Board of Patent Interferences ("board") awarding priority of invention of the counts in issue to the junior party, Kelly et al. ("Kelly"). The counts were copied by Holmes et al. ("Holmes")[1] from Kelly's patent No. 3,416,960, issued December 17, 1968, entitled "Cermet Resistors, their Composition and Method of Manufacture." The dispositive issue, which the board decided in favor of Kelly, is whether Holmes has the right to make the counts. We affirm.

*Subject Matter of the Counts*

The invention relates to a method of making an electrical resistor. Count 1 is illustrative.

*Count 1*

A method of forming an electrical resistance element including the steps of:

forming a mixture of finely ground particles of glass, a solution of dissolved noble metal compound including at least one of the noble metals selected from the group consisting of iridium, rhodium and ruthenium, and particles of at least one filler material selected from the group consisting of $MgSiO_3$, $Al_2O_3$, $CaSiO_3$, $BaSiO_3$, $PbTiO_3$ and $PbZrO_3$;

heating said mixture to drive off the volatile materials thereby producing a dry mixture of glass, filler material and finely divided particles of a noble metal alloy;

grinding the dry mixture to a powder;

mixing the dry powder with a volatile liquid to form a viscous mixture;

applying a layer of the viscous mixture to a high temperature resistant, electrically non-conductive substrate;

heating the substrate and layer to at least the melting temperature of the glass constituent but less than the melting temperature of the metal alloy to produce a continuous glassy phase having the metal alloy particles and filler material uniformly dispersed therethrough.

The last two steps, with which the dispositive issue is concerned, and all the remaining steps except step one are identical in both counts. A mixture of glass particles, metal alloys, and filler material is heated, ground to a powder, and mixed with a volatile liquid to form a viscous mixture (steps 1–4). This mixture is then applied as a layer to a "high temperature resistant, electrically non-conductive substrate" (step 5). The layer of the viscous mixture and the substrate are heated to a temperature sufficient to melt the glass in the mixture, but insufficient to melt the metal alloys (step 6). The resistance of the electrical resistance element of the count is provided by the metal alloy and filler material dispersed throughout the mixture. The filler material prevents the glass particles from spreading and losing their shape while being heated, a problem referred to in the art as "bleed out."

*Proceedings Below*

The examiner found that Holmes had adequate support for the claims he copied from Kelly's patent, and an interference was declared.[2] However, Kelly's motion to dissolve on the ground that Holmes had no right to make the counts with respect to the last two steps was granted by the examiner. After the dissolution of the interference, Holmes's claims were rejected in ex parte proceedings. Holmes filed an affidavit by Vest and Fuller relating to his support for the claims, but the examiner maintained

---

* The Honorable Morgan Ford of the United States Customs Court, sitting by designation.

1. In an amendment filed September 4, 1969, to his application serial No. 506,449, filed October 24, 1965, entitled "Electrical Resistor and Method of Making the Same," which is a continuation of serial No. 169,355, filed January 29, 1962.

2. Interference No. 97,243, declared on June 18, 1970.

the rejection. Holmes appealed, and the Board of Appeals reversed the rejection stating that "appellants' specification . . provides sufficient antecedent basis for the questioned limitation." The interference was then reinstated. Since Kelly was the junior party and did not, in his preliminary statement, predate Holmes's effective filing date, an order to show good and sufficient cause why judgment should not be rendered against Kelly was issued. In response, Kelly filed a second motion to dissolve similar to his original motion. The board treated this as a request for final hearing on the original motion to dissolve.

The board concluded that Holmes's application does not support the last two steps of the counts and awarded priority to Kelly. It observed that Holmes, the copier, has a "heavy burden to show clear and unambiguous support" for each limitation of the claims and found that all of Holmes's examples relate to self-supporting resistors—not film-type resistors (*i. e.*, those with a film supported by a nonconducting base). It pointed out that, regardless of how "substrate" is defined, Holmes does not disclose applying a *layer* of viscous mixture to any substrate, since, in his example in which a powder is mixed with a volatile liquid to form a viscous mixture (step 4 of the counts), the viscous mixture is not applied as a "layer" to a substrate. The board noted that the test is not whether the Holmes disclosure might lead a skilled worker to the method of the counts, but whether there is an unequivocal disclosure. The affidavit of Fuller and Vest was not considered because it was not submitted in accordance with 37 CFR 1.271 and 1.272(c). On reconsideration, the board said that Holmes had ample opportunity to file a motion under 37 CFR 1.251(b) to introduce the affidavit and that the interference would not be reopened to introduce evidence known and accessible to a party at a time when the evidence should have been produced.

## OPINION

### Burden of Proof

 The burden of proof on the right to make issue is on the party who has copied the claims. *Snitzer v. Etzel*, 531 F.2d 1062, 189 USPQ 415 (CCPA 1976). This burden is a heavy one regardless of whether the copier is a junior or senior party (*Fontijn v. Okamoto*, 518 F.2d 610, 186 USPQ 97 (CCPA 1975)), and doubts must be resolved against the copier. *Dreyfus v. Sternau*, 357 F.2d 411, 53 CCPA 1050, 149 USPQ 63 (1966). Holmes does not disagree with these propositions, but argues that, since he obtained a favorable decision from the Board of Appeals in the ex parte proceeding[3] and since Kelly was under an order to show cause, the burden of proof shifted to Kelly. This argument is without merit. At most, Holmes can argue that the burden of going forward shifted to Kelly, while the burden of persuasion remained with Holmes. In the similar case of *Sze v. Bloch*, 458 F.2d 137, 59 CCPA 983, 173 USPQ 498 (1972), this court stated that the board was not bound by an ex parte determination of the Board of Appeals on a right to make issue. A decision by the Board of Appeals can, of course, provide a basis for an interference, but it cannot affect the burden of proof in the interference.[4]

Arguably, Kelly had the burden of going forward, since he was under an order to show cause under 37 CFR 1.225, which meant that he had to show good and sufficient cause why judgment should not be rendered against him. However, Kelly responded with his second motion to dissolve.

---

**3.** As earlier indicated, "board" herein refers to the Board of Patent Interferences, and all references to the Board of Appeals concern Holmes's ex parte prosecution.

**4.** In a similar vein, Holmes argues that the board had an obligation to distinctly point out why the decision of the Board of Appeals was erroneous. Assuming the existence of such an obligation, the board clearly pointed out the error of the Board of Appeals in its detailed discussion of the right to make issue; whereas, the Board of Appeals merely said: "[i]n our view the appellants' specification . . . provides sufficient antecedent basis for the questioned limitation."

This, if granted, would have been good and sufficient cause for judgment not to be rendered against him.[5]

In view of the foregoing, we are satisfied that at least the burden of persuasion before the board was upon Holmes to show clear and unambiguous support for each limitation of the counts. *Rainer v. Unger*, 333 F.2d 244, 51 CCPA 1491, 152 USPQ 23 (1964).

*Right to Make*

◼ Regardless of Holmes's argument that (1) he has adequate support for "substrate" within the meaning of the counts, (2) the counts are not limited to film-type resistors, and (3) the layer is not bonded to the substrate, Holmes does not have support for the limitation—"applying a layer of the viscous mixture to a . . . substrate."[6] In the example where Holmes makes a viscous mixture, he presses the mixture together into a relatively rigid body with a form of its own. He then places the body in a tunnel kiln on a support (or substrate) for heating. Since the body already has a definite form, the support in the kiln merely serves to keep the body from falling due to the force of gravi-

ty. In the counts, the layer is applied to a substrate, indicating that the layer has no form of its own separate from the substrate. We are persuaded that it would unreasonably stretch the meaning of the words of the count to equate Holmes's placing of the body on the kiln support with applying a layer to a substrate. *Cf. Buck v. Desvignes*, 489 F.2d 737, 180 USPQ 193 (CCPA 1973); *Jepson v. Egly*, 43 CCPA 853, 231 F.2d 947, 109 USPQ 354 (1956).

Nor does the statement in Holmes's specification, that with his mixture "the metal glass type resistor can be produced not only as a film supported by a nonconducting ceramic base, but as a self-supporting resistor," provide adequate support for the limitation. There is no description of how a film (clearly a "layer") supported by such a base is produced.

Therefore, we hold that Holmes has not carried his burden of showing clear and unambiguous support for each limitation of the counts.[7]

*Motion to Tax Costs*

◼ Holmes has moved to impose upon Kelly the cost of printing certain parts of

---

**5.** When Holmes obtained a favorable decision from the Board of Appeals, the PTO could not appeal that decision. If, as Holmes appears to argue, Kelly was then obliged to go forward with evidence before the board in support of his second motion to dissolve, an unfair burden would have been placed on Kelly, who presumably had already presented all the evidence he had at the time of his first motion to dissolve (which was ruled upon in his favor by the examiner). If this second motion to dissolve were not sufficient to meet the order to show cause, the case would not be heard on its merits, and, in effect, the board would be bound by the decision of the Board of Appeals, contrary to this court's statement in *Sze v. Bloch, supra*.

**6.** Since this court is bound by 35 U.S.C. § 144 to determine appeals "on the evidence produced before the Patent and Trademark Office," we decline to take judicial notice of the patents submitted by Holmes in his reply brief. *Gellert v. Wanberg*, 495 F.2d 779, 181 USPQ 648 (CCPA 1974).

**7.** The affidavit of Vest and Fuller presented by Holmes during prosecution should have been considered by the board, because it was part of

the ex parte file history which becomes part of the interference record under 37 CFR 1.207(a). This reads:

> When an interference is found to exist and the applications are in condition therefor, the primary examiner shall forward the files to the Board of Patent Interferences . . . . .

We have considered the affidavit, but note that it does not meet the issue of whether Holmes's application supports the limitation of the counts we have discussed. Holmes argues that the affidavit should have been considered by the board under MPEP 1105.02, which covers affidavits introduced for the first time in an interference in response to a motion to dissolve. However, since the affidavit was already part of the record, we need not reach this point. Also, Holmes's contention that he was denied the right to take testimony is not well taken since, as the board noted, Holmes had adequate opportunity to file a motion under 37 CFR 1.251(b), which he failed to exercise until after the board's decision. *See Pritchard v. Loughlin*, 361 F.2d 483, 53 CCPA 1345, 149 USPQ 841 (1966).

238

the printed transcript,[8] namely: portions of the file histories of both his present and parent applications, and certain patents alleged as never having been part of the record below. However, the file histories are automatically part of the record,[9] and the patents in question were before the board. Kelly did not request inclusion of these materials for the purpose of raising a new issue, but only to support his case on the right to make issue. Holmes must pay for so much of the record as is necessary for the court to decide the issues raised by the appeal—here the right to make. *Meitzner v. Mindick*, 549 F.2d 775, 193 USPQ 17 (CCPA), *cert. denied*, 434 U.S. 854, 98 S.Ct. 171, 54 L.Ed.2d 124, 195 USPQ 465 (1977). Since Kelly is not raising any new issues, the entire cost of printing is to be borne by Holmes, and his motion is, therefore, denied.

*Summary*

In view of the foregoing, the decision of the Patent and Trademark Office Board of Patent Interferences awarding priority to Kelly on the ground that Holmes does not have the right to make the counts is *affirmed*.

AFFIRMED.

---

8. A motion to strike these portions was denied earlier.

9. 37 CFR 1.207; *In re Mead*, 569 F.2d 1128, 196 USPQ 811 (CCPA 1978).