Albert R. MARTIN, Appellant,

v.

Ferdy P. MAYER, Appellee.

No. 87–1073.

United States Court of Appeals, Federal Circuit.

June 30, 1987.

Herbert H. Mintz, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, D.C., argued for appellant. With him on the brief was Jerry D. Voight.

Steven B. Kelber, Oblon, Fisher, Spivak, McClelland & Mair, P.C., Arlington, Va., argued for appellee.

Before DAVIS, Circuit Judge, NICHOLS, Senior Circuit Judge, and NEWMAN, Circuit Judge.

PAULINE NEWMAN, Circuit Judge.

Albert R. Martin appeals that part of the decision of the Board of Patent Appeals and Interferences (the "Board") relating to priority of invention of count 6 of Interference No. 101,182, between Martin's U.S. Patent No. 4,347,487 filed November 25, 1980, and appellee Ferdy P. Mayer's patent application Serial No. 202,654 filed October 31, 1980. Mayer is the senior party, having an effective filing date of March 12, 1979. The question on appeal is whether Mayer has the right, in terms of 35 U.S.C. § 112 ¶ 1, to make the claim that is interference count 6.

## Background

The subject matter is high frequency attenuation cables having an electrically conductive outer jacket surrounding inner layers of absorptive, dielectric, and conductive media. Counts 1–4 are directed to the structure of the individual cables. Count 6 is directed to a harness comprising a plurality of such cables. Priority as to counts 1–4 and 6, all the counts, was awarded to Mayer. Issues relating to counts 1–4 are raised in connection with the appeal of count 6. Illustrative count 1, and count 6, are as follows:

1. A high frequency attenuation cable comprising:

a conductor;

a high frequency absorption medium for attenuating high frequency energy through the cable, the absorption medium surrounding the conductor;

dielectric surrounding the absorption medium;

electrically conductive shielding means surrounding the dielectric; and

electrically conductive outer jacketing means surrounding the shielding means.

6. A high frequency attenuation harness comprising a plurality of high frequency attenuation cables wherein each cable comprises:

a conductor;

a high frequency absorption medium for attenuating high frequency energy

through the cable, the absorption medium surrounding the conductor;

dielectric surrounding the absorption medium;

electrically conductive shielding means surrounding the dielectric;

each cable being provided with an electrically conductive outer jacketing means surrounding the shielding means.

The cable of count 1 is illustrated in the drawings of the parties as follows:

Figure 1 of Martin
U.S. Patent 4,347,487

Figure 2a of Mayer
Serial No. 202,564

The pertinent text in Mayer's specification states that "figures 2a, 2b, and 2c illustrate three typical constructions of RFI-suppressor cables, to which the present invention may be advantageously applied", and for Figure 2a adds:

Cover 3″ is an insulating (or conductive) protection.

On the basis of this disclosure, the Board awarded priority to Mayer with respect to counts 1–4. No appeal was taken from that part of the Board's decision.

The harness comprising a plurality of cables, count 6, is illustrated by Martin as follows:

Mayer has no corresponding drawing, and Mayer's text does not discuss a plurality of cables in a harness. Mayer relies on the text associated with his Figure 2a, which states:

It is evident that a multiple wire coaxial structure can be achieved by the same means.

The Board held that Mayer's disclosure complies with the requirements of 35 U.S.C. § 112 ¶ 1,[1] on the basis that a harness of electrical cables is "conventional". The Board did not discuss that a harness is not disclosed in Mayer's specification, and by its decision the Board did not require such disclosure in order for Mayer to make the copied claim and to be awarded priority thereto.

### Burden of Proof

The Board assigned the evidentiary burdens as follows:

Martin has the burden of going forward and Mayer has the burden of persuasion on the issue of right to make. *Holmes v. Kelly,* 586 F.2d 234, 199 USPQ 778 (CCPA 1978).

Martin argues that the Board improperly placed the burden of proof on Martin, the patentee, and did not require that Mayer establish his right to make the copied claim by clear and convincing evidence. Martin states that the Board erroneously relied on *Holmes,* which Martin says is no longer applicable because it was decided at the

1. 35 U.S.C. § 112, ¶ 1, is as follows:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any

person skilled in that art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

time there were two separate boards (for patent appeals and patent interferences).

In *Holmes* the Board of Appeals had held ex parte that Holmes' disclosure supported the claim; and the court held that this Board of Appeals decision was not binding in the subsequent interference proceeding. As the court said in *Holmes*, "at most, Holmes can argue that the burden of going forward shifted" because of the Board of Appeals decision. *Id.* at 236, 199 USPQ at 781. Procedurally, the court treated the Board of Appeals' decision "at most" as equivalent to a prima facie case in favor of Holmes, such that the burden of going forward might shift from the copier to the patentee. However, since support for the count of an interference is ancillary to priority, *Sze v. Block*, 458 F.2d 137, 141, 173 USPQ 498, 501 (CCPA 1972), it was the Board of Patent Interferences that was charged with determining the right to make the count.

In the case at bar there is no prior Board of Appeals decision on Mayer's support for the claim of count 6. An examiner's decision to allow the copied claim to Mayer for interference purposes does not satisfy Mayer's threshold burden in the interference proceeding of presenting a prima facie case of compliance with section 112 paragraph 1. The Board thus misapplied *Holmes* to the case before us.

■ The Board placed on the patentee Martin the burden of presenting a prima facie case that Mayer could *not* make count 6:

> We ... find that Martin has not sustained his burden of going forward with sufficient evidence to prove, *prima facie*, that Mayer has no right to make his involved claims.

Thus the Board erred. It is Mayer, the copier of claims from Martin's patent, who has the burden of proving, by clear and convincing evidence, that "the disclosure on which he relies supports the copied claims

which became the interference counts". *Burson v. Carmichael*, 731 F.2d 849, 852, 221 USPQ 664, 666 (Fed.Cir.1984). See also *DeGeorge v. Bernier*, 768 F.2d 1318, 1321, 226 USPQ 758, 760 (Fed.Cir.1985).

■ This burden requires, as the first step, that Mayer go forward and present a prima facie case of support for the copied claim. This prima facie case must itself be established by clear and convincing evidence. If such prima facie case of support for the count is not made, the patentee Martin will prevail without more.

■ The burden of going forward will shift to the patentee only after the copier has prima facie shown the right to make the copied claim. *Woods v. Tsuchiya*, 754 F.2d 1571, 1575, 225 USPQ 11, 13 (Fed. Cir.), *cert. denied*, 474 U.S. 825, 106 S.Ct. 81, 88 L.Ed.2d 67 (1985). It is immaterial whether the copier has the senior or junior filing date. *Holmes*, 586 F.2d at 236, 199 USPQ at 781. Thereafter, if Martin as patentee produces evidence or argument in rebuttal, the PTO must view the entirety of the evidence and determine whether Mayer has met his burden of persuasion, clearly and convincingly, that he has the requisite support in terms of 35 U.S.C. § 112 ¶ 1. This ultimate burden never shifts.

### Analysis

■ The copier of claims for interference purposes must show support in the copier's specification for every material limitation of the proposed count.[2] *Snitzer v. Etzel*, 531 F.2d 1062, 1065, 189 USPQ 415, 417 (CCPA 1976).

Mayer asserts that the "harness ... of cables" of count 6 is supported because the terms "wire" and "cable" are used "interchangeably" in his specification, referring to page 3, lines 7–8, "Wires and cables using such mixtures", and his claim 1 as filed, "A high frequency attenuation wire or cable". Martin responds that the plain reading of Mayer's specification is that

---

**2.** 37 C.F.R. § 1.205(a) (1984) provided, in pertinent part:

[A]n interference may be declared after copying the claims excluding an immaterial limitation or variation if such immaterial limitation

or variation is not clearly supported in the application or if the applicant otherwise makes a satisfactory showing in justification thereof.

"wires" and "cables" are distinct articles and are not used interchangeably. Martin argues that "multiple wire" in Mayer's specification does not mean "multiple cable", and that Mayer's words "a multiple wire coaxial structure" plainly refer to a single coaxial cable having multiple wires.

Martin adduced expert testimony by deposition of Dr. Frank Doljack, who testified that wires and cables were understood in the art to mean different things, and that the term "multiple wire coaxial structure" was understood as referring to a single cable and not a plurality of cables. Martin thus argues that the words in Mayer's specification do not describe a harness of cables, and particularly not a harness of cables having conductive outer layers, as is required by the count.

The Board, having misplaced the burden of proof on Martin, decided against him. The Board stated that "the Doljack testimony is entitled to little, if any, weight", explaining that the disputed language is "easily understandable", and that "expert testimony will not be received in an interference when it attempts to interpret or explain a disclosure".

There is no rigorous rule excluding expert testimony in an interference. The Board relied on its decision in *Mezrich v. Lee*, 201 USPQ 922, 924 (Bd.Pat.Interf. 1978), wherein one of the inventors, qualified as an expert, explained and interpreted his specification and claims. The Board held that "statements of a party, appearing as a witness, cannot alter a disclosure.... [I]t must speak for itself." *Id.* These facts are not applicable to Martin's witness Doljack, who was an independent expert and whose testimony was of the type held admissible in *Philips v. Matthews*, 197 USPQ 776 (Bd.Pat.Interf.1977). In *Philips* the Board held that although "expert testimony may not ordinarily be received for the purpose of explaining a disclosure" or to determine "the scope of the issue",

> [o]n the other hand, just as a party may introduce dictionaries and textbooks for the purpose of establishing facts such as the meaning of various terms to those skilled in the art and the properties of

various materials ... so may he employ the testimony of an expert for that same purpose.

*Id.* at 777–78. Doljack's testimony as to what the terms "wire", "cable", and "coaxial" meant to a person skilled in the art was of this character.

■ Thus the Board erroneously excluded this evidence, and then held that:

> Absent any competent evidence to the contrary, lines 30 to 31 [of the Mayer specification: "It is evident that a multiple wire coaxial structure can be achieved by the same means."] appear to indicate a conventional harness made up of a simple plurality of the Figure 2a coaxial structures bundled together, upon which Claim 34 [count 6] reads.

The evidence as to whether "wire" and "cable" mean the same thing is overwhelmingly against Mayer's interpretation: the evidence of common usage in Mayer's specification, and Doljack's testimony to the same effect, provide no support for Mayer's burden under section 112.

In support of his argument that a harness of cables is conventional Mayer relies on Martin's patent specification to show that details of how the cables are bound into a harness are not necessary, and on the Board opinion itself which mentioned "the conventional nature of the harness".

■ In considering whether Mayer has the right to make the claim corresponding to the count for interference purposes, the only inquiry is whether Mayer's disclosure contains, in accordance with the principles of section 112 paragraph 1, support for all material limitations of the claim as presented in Martin's patent. *Squires v. Corbett*, 560 F.2d 424, 433, 194 USPQ 513, 519 (CCPA 1977). Martin's disclosure can not be drawn upon to fill any gaps in that of Mayer. And the Board's reasoning, of course, is not evidence.

■ The issue is not whether one skilled in the art would have been able to make a harness using knowledge of the art, but rather did Mayer's application sufficiently describe a harness of cables with conductive outer jackets. Section 112 does not

require that the specification contain that which is known to those skilled in the art. *Machinenfabrik GMBH v. American Hoist & Derrick Co.*, 730 F.2d 1452, 1463, 221 USPQ 481, 489 (Fed.Cir.1984). But it does require specificity as to the claim limitations that characterize the interference count. It is "not a question of whether one skilled in the art *might* be able to construct the patentee's device from the teachings of the disclosure.... Rather, it is a question whether the application necessarily discloses that particular device." *Jepson v. Coleman*, 314 F.2d 533, 536, 136 USPQ 647, 649–50 (CCPA 1963) (emphasis in original).

 It is not required that the application describe the claim limitations in greater detail than the invention warrants. The description must be sufficiently clear that persons of skill in the art will recognize that the applicant made the invention having those limitations. *In re Wertheim*, 541 F.2d 257, 262, 191 USPQ 90, 96 (CCPA 1976). Mayer's specification must "convey clearly to those skilled in the art to whom it is addressed ... the information that [he] has invented the specific subject matter later claimed." *In re Ruschig*, 379 F.2d 990, 995–96, 154 USPQ 118, 123 (CCPA 1967). Although the burden of going forward had not shifted to Martin, Martin presented evidence through Doljack that such bundling was not conventional as applied to cables with a conductive outer layer. No contrary testimony was presented.

The only limitation in count 6 that does not occur in count 1 is the harness of a plurality of cables. Applying the correct burden of proof, we discern no disclosure in the Mayer specification of a plurality of cables, and no reference to a harness of cables wherein each cable has the conductive shield, all as required by count 6. The Board's statement that it is conventional to make the harness of cables of count 6 is not supported by evidence. Mayer had not presented a prima facie case, by clear and convincing evidence, of compliance with 35 U.S.C. § 112 ¶ 1.

Mayer also argues that by failing to appeal the decision on counts 1–4 Martin has made an admission against interest, so that the issue on appeal is merely whether it is conventional to bundle known cables in a harness. Not so. Each claim copied from an issued patent must be supported in terms of section 112 paragraph 1, independent of the other claims. An unappealed adjudication of priority as to some counts does not give those counts a new status, as prior art or as evidence, with respect to support for other counts. The Board did not hold otherwise.

### Conclusion

The Board erred in holding that Mayer's specification supported count 6 in terms of 35 U.S.C. § 112 ¶ 1. The decision is

REVERSED.